**ACE MOVING & STORAGE, INC., Adam Meyer, Inc., Clemmer Moving & Storage, Inc., Fisher-Hughes of Allentown, Inc., Frick Transfer, Inc., Keller Moving & Storage, Inc., Morgan Moving & Storage, Inc., O'Brien's Moving & Storage, Inc., Reads Van Service, Inc., Shelly Moving & Storage, Inc., Shivelys Moving & Storage, Inc., Petitioners**

v.

**PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 10, 2007.

Decided Oct. 29, 2007.

William H. R. Casey, Doylestown, for petitioners.

Stanley E. Brown, Asst. Counsel and Bohdan R. Pankiw, Chief Counsel, Harrisburg, for respondent.

Joel G. Kalman, Huntingdon Valley, for intervenor, Shannon Transport, Inc. t/a Shannon Moving & Storage.

BEFORE: COLINS, Judge, FRIEDMAN, Judge, KELLEY, Senior Judge.

OPINION BY Judge COLINS.

Numerous moving and storage companies (Protestants) have filed a petition for review of an order of the Public Utility Commission that denied exceptions the Protestants had filed to a decision of an Administrative Law Judge (ALJ) who had denied their objections to an application filed by Shannon Transport, Inc. to expand its right as a common carrier to transport by motor vehicle household goods between points in the counties of Philadelphia, Delaware, Chester, Montgomery, Bucks, Berks, Lehigh, and Northampton, limited to the provision of services for clients or customers of several real estate companies and a branch of the Automobile Association of America.[1] We reverse.

The pertinent factual determinations, derived from the ALJ's decision, are as follows. Shannon is a transportation and storage company with authority to move general and household property on an interstate and intrastate basis in New Jersey and on an intrastate basis in Pennsylvania limited to general property, i.e., property other than household goods. The PUC first provided Shannon with the authority to transport general property throughout Pennsylvania in 1997. Shannon had previously transported household goods on an interstate basis for customers of realtors Weichert, Long & Foster, Prudential Fox & Roach, and of AAA Mid–Atlantic (AAA). The record testimony indicates that the realtors evaluate the service of movers and then make referrals to their customers. These three realtors and AAA expressed an interest in having Shannon have the ability to perform household goods transportation for their customers on an intrastate basis in Pennsylvania, because they have clients who have shown a need for transportation of household goods over short distances. Shannon pays a commission to the realtors after it has moved property for one of the realtors' clients.

Shannon has been providing service to clients of Weichert for approximately three years. Since 2003, Shannon has performed more that 600 moves for Weichert, many of which are small moves involving lower fees that other movers reject in favor of larger moves that may involve fees of thousands of dollars. Weichert's internal transporter evaluation indicates that Shannon has an excellent performance record with regard to moves Shannon has conducted for Weichert's clients. Weichert, which has several hundred offices in Pennsylvania has a need to have a pool of movers from which to draw in seeking to satisfy its clients' needs. Weichert would like to be able to recommend Shannon to its clients as a transporter of household goods within Pennsylvania.

Shannon has provided outstanding moving services for clients of Long & Foster for one to two years and has a "spotless record." Long & Foster would like to be able to refer clients to Shannon for intrastate transportation of household goods. With regard to Prudential Fox & Roach, the ALJ determined that Shannon had performed over 1,000 interstate moves for that realtor's clients and has been the leading mover for Fox & Roach's clients'

---

1. This Court's standard of review is limited to considering whether necessary factual findings are supported by substantial evidence, and whether the Commission erred as a matter of law or committed any constitutional violations. 2 Pa.C.S. § 704.

home moving needs for the previous six years. Fox & Roach, like Weichert and Long & Foster, would like to be able to recommend Shannon to their clients for intrastate moves of household goods.

As to AAA, the ALJ found that Shannon agreed to provide discount services to AAA's members for the period from January 1, 2006 through December 31, 2007.

The ALJ, noting that Shannon, in seeking approval for its application to serve as a common carrier, had the burden to establish that such approval would serve a useful public purpose that is responsive to a public demand or need, 52 Pa.Code § 41.41, concluded that Shannon had satisfied this burden because it had offered evidence supporting the public purpose and need for its expanded services with regard to the realtor entities [2] and that, as a carrier already certified to provide interstate service, it enjoyed a rebuttable presumption that it was technically and financially fit. With regard to this rebuttable presumption, the ALJ concluded that the Protestants had not overcome the presumption, and that the Protestants had failed to satisfy their burden to show that Shannon's expanded authority would, on balance, endanger or impair the operations of common carriers that already are authorized to conduct business in the particular counties at issue.

The Protestants filed exceptions to the decision with the Commission, which the Commission denied, with modification. The Commission opined that the ALJ's language might appear more broad than appropriate by possibly suggesting that any time one of the realtors suggested Shannon, the company would have the authority to perform a move. The Commission clarified the ALJ's decision by directing that Shannon could provide the approved intrastate services only for customers of the realtors "who personally have a contractual agreement" with one of the realtors.

The Protestants raise the following issues for this Court's review: (1) whether substantial evidence supports the Commission's determination that granting the application serves a public purpose and is responsive to public demand or need; and (2) whether the Commission erred as a matter of law by relying upon letter evidence of realty companies.

The Protestants contend that the Commission erred in affirming the ALJ's reliance upon evidence of need or demand from the realtors. The Protestants cite 52 Pa.Code § 3.382(a), which relates to evidentiary guidelines for household goods transportation applications. That regulation describes the manner in which an applicant, seeking to establish demand or need, may introduce evidence of service requests it has received from potential customers to provide moving services. The regulation states that the weight an ALJ, or the Commission, may attribute to such evidence will depend upon the degree to which such evidence is substantiated by such information as (1) the date of the request, (2) the identification of the persons, (3) the nature of the service requested, and (3) the disposition of the request, i.e., performance or referral of the service.

Requests for service can constitute evidence that this Court has held to be reliable to establish proof of need for service. *Modad Taxicab Company v. Pennsylvania Public Utility Commission*, 51 Pa. Cmwlth. 616, 415 A.2d 126, 127 (1980). In that case, the applicant testified that his daughter had received the requests for services. This Court noted that, because

---

**2.** The ALJ denied the application as to AAA, concluding that Shannon had not offered sufficient evidence of a demand or need of AAA clients or customers.

the applicant himself had not received the requests, his testimony could be hearsay. Although the Protestants do not raise a hearsay challenge, we note that the Court in *Modad* stated that it could not reverse the Commission on the basis of hearsay unless that evidence constituted the sole support for a necessary factual finding. *Id.*

In this case, the testimony of an employee of Weichert's regarding need for service was essentially based upon not a distinct desire to satisfy the realtor's own need for a mover, but rather to satisfy their clients' purported needs. Although Mr. Sipera, Shannon's employee, testified regarding requests he received from the **realtors**, and the testimony of Weichert's employee supports that testimony, we do not believe that such testimony was sufficient to establish public need or demand.

As noted above, Mr. Sipera's testimony concerned not requests by actual potential customers, i.e., people who wanted their belongings moved, but rather requests by the realtors. Unlike *Modad*, where the owner provided hearsay evidence regarding communications he received from his daughter of **actual** users who were interested in the subject service, Shannon has not offered any evidence of **actual** users' need for the service. Rather than constituting actual specific requests for service, the evidence related to a separate category of persons who experienced an indirect need for the services Shannon is willing to provide.

In *Re Blue Bird Coach Lines, Inc.*, 72 Pa.P.U.C. 262, 274 (1990), the Commission made the following pronouncement:

> Both appellate court decisions and Commission orders have confirmed that, in the context of subsection 1103(a) [66 Pa.C.S. § 110(a) ], a public demand/need for an applicant's proposed transportation service may be proven through witnesses comprising a representative sampling of the public that will use the applicant's proposed service within the territory encompassed by the application.

In *Yellow Cab Company v. Public Utility Commission*, 673 A.2d 1015, 1018 (Pa. Cmwlth.1996), this Court noted that

> [t]he Commission has held that a public demand or need for an applicant's proposed service **must be proved through witnesses comprising a representative sampling of the public that will use the service;** such witnesses must be legally competent and credible; their testimony must be probative and relevant to the application, and they must articulate a demand/need for the type of service embodied in the application. *Re Blue Bird Coach Lines, Inc.*, 72 Pa. P.U.C. 262 (1990). An applicant is not required to show demand for its service at every point in the proposed territory; it is sufficient to show that need exists within the area generally served. *Morgan Drive Away, Inc. v. Pennsylvania Public Utility Commission*, 99 Pa. Cmwlth. 420, 512 A.2d 1359 (1986).

(Emphasis added.)

The Commission's decision in *Blue Bird*, upon which the Commission here relies, was based almost entirely on evidence of actual users' testimony concerning a need for the services Blue Bird offered. The decisions in *Blue Bird* and *Yellow Cab* make clear that the Commission and this Court have required the testimony of **actual** users, not testimony of persons seeking to refer the proposed service to actual users.

In *Blue Bird*, the Commission stated

> The particular circumstances of a case determine what constitutes sufficient evidence of a public demand/need for the applicant's proposed service. Therefore,

the number of witnesses which will comprise a cross section of the public on the issue of the public demand/need will necessarily vary with the circumstances of the case such as the breadth of the applicant's intended operating territory, the population density in the intended operating territory, and the scope of the requested operating authority. Where the intended operating territory is broad and heavily populated and the applicant seeks an expansive grant of operating authority, more witnesses are required to show a cross section of the public needing the applicant's proposed transportation in the intended operating territory. Conversely, where the intended operating territory is restricted and not populous and the applicant seeks a narrow grant of operating authority, fewer witnesses are required to show a cross section of the public needing the applicant's proposed transportation in the intended operating territory.

*Blue Bird*, 72 Pa.P.U.C. at 274–5.

We do not believe that the limitation in the Commission's order to allow Shannon to provide service only to the realtors' customers provides a reason for a different outcome. The standard the Commission has developed requires an applicant to show that the actual users of a proposed service have a need. Shannon has not satisfied that standard of proof.[3]

As to the evidence concerning the inadequacy of available moving companies for short trips, we note that such evidence may be relevant to the ultimate inquiry of whether a demand exists for a particular service, but that, as noted above, such evidence is insufficient in itself to establish a demand or need for service. Based upon the foregoing, we need not address the remaining issues, and we reverse the Commission's decision.

Finally, the Protestants have filed a motion for oral argument before the Court. However, because we have concluded that the Protestants are correct in asserting that Shannon failed to submit sufficient evidence in support of a demand or need, we do not believe oral argument is warranted. Accordingly, we will deny this motion.

### *ORDER*

AND NOW, this 29th day of October 2007, the Petitioners' motion for oral argument is denied and the order of the Commission is reversed.

---

**3.** Shannon cites an unpublished decision of the Commission to support its position; however, the Court is not bound by unpublished decisions of the Commission as authority in resolving this appeal.